**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| BRUNETTEA JONES, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>        v.<br><br>DIAMOND JUBILEE ENTERPRISES, INC., and POPEYES LOUISIANA KITCHEN, INC.,<br><br>      Defendants. | No. 1:25-CV-00257<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Brunettea Jones brings this proposed class action against Diamond Jubilee Enterprises, Inc. and Popeyes Louisiana Kitchen, Inc. on behalf of employees at a Popeyes restaurant in Richton Park, Illinois, for alleged violations of the Illinois Biometric Information Privacy Act (commonly called BIPA), 740 ILCS 14/1 *et seq*. R. 14, First Am. Compl. ¶¶ 11, 43, 49–57.[1] The Defendants move to dismiss the First Amended Complaint, R. 18, Popeyes's Mot.; R. 24, Jubilee's Mot., and to sanction Jones and her attorneys under Civil Rule 11, R. 34, Defs.' Sanctions Mot. Because Jones fails to state a plausible BIPA claim against Popeyes, her claims against Popeyes are dismissed, though without prejudice for now. And without Popeyes as a defendant, there is no minimal diversity of citizenship as required under the Class

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Action Fairness Act, so the Court would relinquish jurisdiction over the case. The Court denies the motion for sanctions because Jones and her attorneys had a reasonable basis for bringing this case against the Defendants.

## I. Background

For the purposes of this motion, the Court accepts as true the factual allegations in Jones's First Amended Complaint and draws all reasonable inferences in her favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007)).

Jones worked at a Popeyes located in Richton Park, Illinois, from March to May 2024. First Am. Compl. ¶ 11. When she started the job, she was required to submit a scan of her thumbprint. *Id.* ¶ 12. Jones alleges that her thumbprint was registered in the Popeyes system under someone else's name, either Crystal Waters or Walters (she does not explain how that came to be). *Id.* ¶ 13. Jones used her thumbprint to clock in and out of work. *Id.* ¶ 32. She also used her thumbprint to log in to the restaurant's Point of Sale (called POS by the parties) system when she attended to customers at the drive-thru window and when she packed customer orders. *Id.* ¶ 15. According to Jones, the system would often time-out after five minutes, requiring her to scan her thumbprint again to log in. *Id.* ¶ 17. As a result, her thumbprint was captured at least 10 to 20 times per shift. *Id.* ¶ 16.

Jones alleges that she never provided a written release authorizing the Defendants to capture or disclose her thumbprint. First Am. Compl. ¶ 19. And she says that the Defendants never informed her of the specific purpose or length of time for

2

which they collected her thumbprint. *Id.* ¶ 18. Finally, she alleges that the Defendants do not make publicly available any biometric data-retention policy, nor have they informed Jones whether they will ever permanently delete her thumbprint. *Id.* ¶ 20. She argues that these practices violate BIPA, which (1) requires private entities to make available to the public a policy for destroying biometric identifiers and information when it is no longer needed or a certain length of time has passed, and (2) prohibits private entities from collecting an individual's biometric identifier or information without their written, informed consent. *Id.* ¶¶ 49–57; *see* 740 ILCS 14/15(a)–(b). Based on those allegations, she brings a proposed class action on behalf of herself and other Illinois citizens who worked at the Richton Park Popeyes and whose biometric identifiers or information were collected in the past five years. *Id.* ¶ 43.

## II. Legal Standard

A motion under Civil Rule 12(b)(1) tests whether the Court has subject matter jurisdiction, *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999), whereas a Rule 12(b)(6) motion tests the sufficiency of the complaint, *Hallinan*, 570 F.3d at 820; *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(1) motion, the petitioner must establish that the district court has subject matter jurisdiction. *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds*, *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). "If subject matter jurisdiction is not evident on the face of the complaint, [then] the ... Rule 12(b)(1) [motion is] analyzed [like] any other motion

3

to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task ...." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan*, 570 F.3d at 820. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allega-

tions "must be enough to raise a right to relief above the speculative level." *Twombly*,

550 U.S. at 555. The allegations that are entitled to the assumption of truth are those

that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

### A. Motions to Dismiss

The Defendants raise several arguments in support of dismissal. Popeyes's

Mot.; Jubilee's Mot. Because the Court must assure itself of its subject matter juris-

diction before addressing the merits of the case, *Mathis v. Metro. Life Ins. Co.*, 12

F.4th 658, 663–64 (7th Cir. 2021), first up for examination is Jubilee's argument

against jurisdiction. Jubilee's Mot. at 6–7. The Court then addresses Popeyes's stand-

ing arguments. Popeyes's Mot. at 9–12. Finally, after determining that the Court has

subject matter jurisdiction, it addresses Popeyes's argument that it is not liable for

any BIPA violations. *Id.* at 5–7.

### 1. Class Action Fairness Act

The Class Action Fairness Act (commonly referred to as CAFA) grants district

courts subject matter jurisdiction over class-action suits when the following require-

ments are met: (1) there are at least 100 class members, (2) the amount in controversy

exceeds $5 million, and (3) there is diversity of citizenship between any member of

the class and any of the defendants. 28 U.S.C. § 1332(d)(2), (5)(B), (6). Jubilee

contends that the Court lacks jurisdiction under CAFA because the amount-in-controversy and diversity-of-citizenship requirements are not met.[3] Jubilee's Mot. at 6–7.

At the outset, the Court notes that Jones simply did not respond to Jubilee's jurisdictional argument. *See generally* R. 29, Pl.'s Resp. Br. "[A] plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). So Jones's failure to respond is problematic, to say the least. *See In re Littman*, 551 B.R. 355, 361 (N.D. Ill. 2015) ("[T]he *proponent* of subject matter jurisdiction … may forfeit an argument that could have been made to *support* jurisdiction." (emphasis in original)). Still, because it is clear that CAFA jurisdiction would apply—*if* Popeyes can be retained as a defendant (in an amended pleading)—the Court declines to find waiver or forfeiture by Jones on subject matter jurisdiction.

### a. Amount in Controversy

"The plaintiff's allegations about the amount in controversy control unless the court concludes, to a legal certainty, that the face of pleadings demonstrates that the plaintiff cannot recover the jurisdictional minimum." *Sykes v. Cook Inc.*, 72 F.4th 195, 205 (7th Cir. 2023) (cleaned up). Here, Jones alleges that the amount in controversy

---

[3]The Court does not have diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because Jones and Jubilee are citizens of the same state, Illinois. *See* Jubilee's Mot. at 5–6; First Am. Compl. ¶¶ 1–2.

exceeds $5 million. First Am. Compl. ¶ 9. Class members can receive up to $5,000 in statutory damages for each intentional or reckless violation of BIPA. 740 ILCS 14/20(a)(2). Jones says that her thumbprint was collected at least 20 times each shift. First Am. Compl. ¶ 16. If each class member worked even one shift in which their thumbprint was collected 20 times, the class could claim at least $10 million in damages.[4] *See* 28 U.S.C. § 1332(d)(6) (describing how "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds … $5,000,000"). Thus, Jones's estimate of the amount in controversy is legally possible.[5]

Jubilee notes that the Illinois legislature recently amended BIPA to limit statutory damages. R. 32, Jubilee's Reply Br. at 3. In 2023, the Illinois Supreme Court held in *Cothron v. White Castle System, Inc.* that "a separate claim accrues under the

---

[4]The Court reaches this figure as follows: 100 class members * 20 violations per member * $5,000 in statutory damages per violation = $10,000,000.

[5]Jones estimates that there are hundreds of class members. First Am. Compl. ¶ 44. Although it is not clear from the face of the First Amended Complaint, the Court assumes that the class is limited to employees who worked at the Richton Park location, rather than employees at all Popeyes locations. Jubilee provided evidence that 418 Illinois citizens worked at the Richton Park Popeyes from January 9, 2020, to January 9, 2025, when Jones filed this suit. R. 44, Juris. Memo. ¶¶ 10–11; R. 44-1, Kassam Decl. ¶ 5. But Jubilee contends that not all of those employees' thumbprints were collected: it presents evidence that only 84 employee identifiers were saved in its POS system during the class period. Juris. Memo. ¶¶ 12–13; Kassam Decl. ¶¶ 6, 8. The Court need not decide this issue now because, even with only 84 class members, the amount in controversy exceeds $5 million (84 class members * 20 violations per member * $5,000 in statutory damages per violation = $8,400,000). Although there must be at least 100 class members to establish jurisdiction under CAFA, Jubilee does not argue in its motion to dismiss that there are fewer than 100 class members. *See* Jubilee's Mot. at 6–7. And Jones has not had an opportunity to conduct discovery on this issue. Because the Court ultimately dismisses the First Amended Complaint without prejudice, it merely notes this potential jurisdictional issue for Jones to consider if she repleads against Defendants.

Act each time a private entity scans … an individual's biometric identifier or information." 216 N.E.3d 918, 920 (Ill. 2023). Then in August 2024, the legislature amended BIPA to clarify that "a private entity that, in more than one instance, collects … the same biometric identifier or biometric information from the same person using the same method of collection … has committed a single violation … for which the aggrieved person is entitled to, at most, one recovery." 740 ILCS 14/20(b); *Jones v. USP Chi., Inc.*, 2025 WL 1547290, at *1 (N.D. Ill. May 29, 2025).

If it applied to this case, then the statutory amendment would significantly limit the amount that the class members can legally recover. Instead of potentially recovering $5,000 for *each time* that Defendants collected their thumbprint—which could sum to hundreds of thousands in damages for each person—class members would be limited to a maximum of $10,000 for *each person*. *See Jones*, 2025 WL 1547290, at *2 (describing how, under the amendment, each class member can recover at most $5,000 per violation of each statutory subsection); Pl.'s Resp. Br. at 5 (describing how the First Amended Complaint alleges that Defendants violated subsections (a) and (b) of BIPA). Based on the amendment, Jubilee argues that it is legally impossible for the amount in controversy to exceed $5 million. Jubilee's Reply Br. at 3.

But most of the alleged BIPA violations took place before the August 2024 amendment. *See* First. Am. Compl. ¶ 11 (describing how Jones worked at Popeyes from March to May 2024); *id.* ¶ 43 (defining the class to include Illinois citizens who worked at Popeyes in the past five years). Thus, unless the statutory amendment

operates retroactively, the Illinois Supreme Court's interpretation of the statute in *Cothron* governs for most of the alleged violations (allowing class members to recover statutory damages for each time their thumbprints were collected).

Illinois trial courts and courts in this District have determined that the amendment does not apply retroactively. *Willis v. Universal Intermodal Servs., Inc.*, 2025 WL 2549234, at *1 (N.D. Ill. July 14, 2025) (collecting cases). The Court agrees. Under Illinois law, an amendment that clarifies a statute's original meaning applies retroactively because the legislature always intended the statute to have that meaning. *See Jones*, 2025 WL 1547290, at *2. "If, on the other hand, an amendment changes the law, a court must determine whether the amendment applies retroactively or prospectively." *Id.* To answer these questions, the Court proceeds in two steps: first, the Court determines whether the BIPA amendment changed the law or merely clarified it. Second, if the amendment changed the law, then the Court examines whether the change in law applies retroactively or prospectively.

"Although a statutory amendment creates a presumption that it was intended to change existing law, this presumption is not controlling." *People v. Stewart*, 215 N.E.3d 752, 758 (Ill. 2022). "Circumstances that may indicate a legislative intent to clarify rather than make a substantive change in the law include whether the enacting body declared that it was clarifying a prior enactment; whether a conflict or ambiguity existed prior to the amendment; and whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history." *Id.* (cleaned up).

9

These considerations support the proposition that the 2024 amendment did not clarify the law under BIPA, but instead changed it. First, although it knows how to do so, "the Illinois legislature did not expressly declare that the amendment serves as a clarification." *Jones*, 2025 WL 1547290, at *3; *see also Schwartz v. Supply Network, Inc.*, 2024 WL 4871408, at *2 (N.D. Ill. Nov. 22, 2024). Second, because the Illinois Supreme Court found the statutory language unambiguous in *Cothron*, there was no interpretive ambiguity or conflict in the law prior to the amendment. *Jones*, 2025 WL 1547290, at *3; *Cothron*, 216 N.E.3d at 924 (holding that the "plain language of the statute" supported the Supreme Court's interpretation); *Gregg v. Cent. Transp. LLC*, 2025 WL 907540, at *2 (N.D. Ill. Mar. 21, 2025) ("The inherent conflict between the amended provision and the *Cothron* court's interpretation of the original statute suggests that the legislature indeed intended to change, not clarify, the original law."). Finally, the amendment is inconsistent with a reasonable interpretation of the prior enactment and legislative history because "the legislature intended to use the possibility of substantial liability as a means to incentivize private entities to comply with the law," and an amendment that "limits potential liability is inconsistent with this interpretation of the prior statute." *Jones*, 2025 WL 1547290, at *4.

Because the BIPA amendment changed the law, the Court must determine whether the change applies retroactively or prospectively. *Jones*, 2025 WL 1547290, at *4. Illinois courts use the United States Supreme Court's retroactivity analysis from *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). *Perry v. Dep't of Fin. & Prof. Regul.*, 106 N.E.3d 1016, 1026 (Ill. 2018). "Under step one of *Landgraf*, a court first

determines whether the legislature has expressly prescribed the temporal reach of the new law." *Id.* (cleaned up). "If the legislature has clearly indicated the temporal reach, then such temporal reach must be given effect unless to do so would be constitutionally prohibited." *Id.* But in Illinois, "if the temporal reach has not been clearly indicated within the text of the new law, then the legislature's intent as to temporal reach is provided by default in section 4" of the state's Statute on Statutes. *Id.* Section 4 instructs "that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only." *Id.* at 1027 (cleaned up); *see also* 5 ILCS 70/4.

The BIPA amendment contains no express language about its temporal reach. *See* 740 ILCS 14/20(b). Section 4's default rule thus applies. And because the amendment changed the scope of what constitutes a single BIPA violation, thereby limiting the scope of liability for private entities, it enacted a substantive change in law. *See Jones*, 2025 WL 1547290, at *5; *Gregg*, 2025 WL 907540, at *2; *Schwartz*, 2024 WL 4871408 at *5. Thus, under section 4, the amendment must apply only prospectively. *See id.*

Because the amendment does not apply retroactively, it remains legally possible for Jones and most class members, whose thumbprints were collected before August 2024, to obtain separate damages for each thumbprint collection. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 619 (7th Cir. 2007) (explaining that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place" (cleaned up)). It is thus legally possible for the

11

class to obtain over $5 million in damages. *See Jones*, 2025 WL 1547290, at \*6. The amount-in-controversy requirement under CAFA is met.

### b. Minimal Diversity of Citizenship

If Popeyes were to remain a defendant, then there would be minimal diversity because the class members are Illinois citizens, whereas Popeyes is a citizen of Minnesota and Florida. *See* First Am. Compl. ¶¶ 1, 4, 43; 28 U.S.C. § 1332(c)(1). But if Popeyes is dismissed as a defendant, then the CAFA requirement for even just minimal diversity of citizenship would not be met. Jubilee, the only other defendant, is an Illinois corporation with a principal place of business in Illinois. First Am. Compl. ¶ 2. So diversity of citizenship depends on Popeyes' fate, which is discussed below, *see infra* Section III.A.3.

### c. Home-State Controversy Exception

Finally, Jubilee argues that even if the CAFA requirements are met, the home-state controversy exception applies. Jubilee's Mot. at 6–7. Under this exception, the Court "shall decline to exercise jurisdiction" when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).[6] Because the class is limited to Illinois citizens, more than two-thirds of the class members are citizens of Illinois, where this case was filed. First Am.

---

[6]Jubilee also argues that "a class pursuing Biometric Information Privacy Act claims cannot be restricted to Illinois citizens," quoting *Railey v. Sunset Food Mart, Inc.*, 16 F.4th 234, 240 (7th Cir. 2021). Jubilee's Reply Br. at 3–4. But *Railey* rejected this argument. 16 F.4th at 240.

Compl. ¶ 43. But the exception only applies if each of the "primary defendants" are also Illinois citizens. 28 U.S.C. § 1332(d)(4)(B); *see Sudholt v. Country Mut. Ins. Co.*, 83 F.4th 621, 628–29 (7th Cir. 2023). The Court determines whether a defendant is a "primary defendant" by assessing "the plaintiff's complaint as a whole—its factual allegations, claims, and requests for relief—with an eye toward examining whether the defendant in question is a principal focus of the class action." *Sudholt*, 83 F.4th at 629.

Here, both Popeyes and Jubilee are primary defendants. The factual allegations in the First Amended Complaint focus on both defendants. Indeed, Jones argues that the two entities jointly employed her and are thus both responsible for collecting her thumbprint. First Am. Compl. ¶ 11; Pl.'s Resp. Br. at 17. Because Popeyes is one of the primary defendants but is not an Illinois citizen, First Am. Compl. ¶ 4, the exception does not apply. Thus, *if* Popeyes were to have remained in the case, then the Court would have had subject matter jurisdiction under CAFA.

### 2. Standing

"Because standing is an essential ingredient of subject-matter jurisdiction," *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020), the Court next addresses Popeyes's arguments that Jones lacks standing to bring BIPA claims against it, Popeyes's Mot. at 9–12. At this stage, Jones need only plausibly allege each element of standing: "(1) she must have suffered an actual or imminent, concrete and particularized injury-in-fact; (2) there must be a causal connection between her injury and the conduct complained of; and (3) there must be a likelihood that this injury will

be redressed by a favorable decision." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620–21 (7th Cir. 2020); *Bazile*, 983 F.3d at 278.

First, Popeyes contends that there is no plausible causal connection between Jones's injury under Section 15(b) of BIPA and Popeyes's alleged conduct. Popeyes's Mot. at 10. Section 15(b) prohibits the collection of biometric identifiers and information without written consent. 740 ILCS 14/15(b). Popeyes argues that it did not employ Jones, and thus did not collect her thumbprint. Popeyes's Mot. at 10. The Court addresses this argument below because it really goes to the *merits* of Jones's claim—whether Jones has plausibly alleged that Popeyes is responsible for collecting her thumbprint—rather than presenting a "standing" issue. Usually, defendants raising a causation argument contend that the casual chain between the plaintiff's injury and the defendant's alleged conduct is too attenuated. *See Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1025 (7th Cir. 2024). Whereas here, assuming Jones has adequately alleged that Popeyes collected her thumbprint, her privacy injury is "fairly traceable" to Popeyes's conduct. *California v. Texas*, 593 U.S. 659, 668–69 (2021). Popeyes's first standing argument is thus rejected.

Second, Popeyes contends that Jones fails to plead a particularized injury related to its alleged violation of Section 15(a) of BIPA. Popeyes's Mot. at 10–11. Section 15(a) requires private entities to make public a retention policy for biometric identifiers and information. 740 ILCS 14/15(a). The Seventh Circuit has drawn a distinction between plaintiffs who allege "a mere failure to publicly disclose a data-retention policy" and those who allege that the defendant "fail[ed] to develop, publicly disclose,

14

*and comply with* a data-retention schedule." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1154 (7th Cir. 2020) (emphasis in original). The former plaintiffs do not allege a particularized injury because "the duty to disclose under section 15(a) is owed to the public generally, not to particular persons whose biometric information the entity collects." *Bryant*, 958 F.3d at 626. But the latter plaintiffs plead a particularized injury because they further allege that their biometric data was unlawfully retained, which is "as concrete and particularized an injury as an unlawful *collection* of a person's biometric data." *Fox*, 980 F.3d at 1154–55 (emphasis in original). Drawing on this line of precedent, Popeyes argues that Jones has only alleged that Popeyes failed to publicly disclose a retention policy, not that it unlawfully retained her data, and thus she has not pled a particularized injury. Popeyes's Mot. at 10–11.

Not so. Jones says that the Defendants have not "informed [her] whether they will ever permanently delete [her] thumbprint." First Am. Compl. ¶ 20. Similarly, she alleges that "[a]n employee who leaves the company does so without any knowledge of when or if their biometric identifiers will be removed from Defendants' database." *Id.* ¶ 36. These allegations raise a reasonable inference that Popeyes has unlawfully retained Jones's biometric identifier, which is a particularized injury. *See Fox*, 980 F.3d at 1154; *Kalb v. GardaWorld CashLink LLC*, 2021 WL 1668036, at \*3 (C.D. Ill. Apr. 28, 2021) (concluding that the plaintiff's allegation that defendant failed to develop guidelines for the destruction of biometric data reasonably suggested that

15

defendant had unlawfully retained plaintiff's data). Thus, Jones has standing to bring both of her BIPA claims against Popeyes.[7]

### 3. Failure to State a Claim Against Popeyes

The Court now turns to Popeyes's arguments for dismissal under Civil Rule 12(b)(6). Popeyes posits that it is an improper defendant because it did not employ Jones. Popeyes's Mot. at 5–7. Instead, Popeyes contends that Jubilee—the franchisee that ran the Richton Park Popeyes restaurant—was responsible for all employment policies, including the collection of employees' thumbprints. *Id.* To support this argument, Popeyes introduces several pieces of evidence with its motion to dismiss: an excerpt of the Franchise Agreement between Popeyes and Jubilee, *see id.* at 3, and Jones's payroll records, which list Jubilee as her employer, *see* R. 18-1, Exh. A, Payroll Records.

But the Court cannot consider Popeyes's evidence at this stage. Typically, when a defendant attaches evidence to a Rule 12(b)(6) motion to dismiss, the Court must either convert the motion to a motion for summary judgment under Civil Rule 56 or exclude the documents. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Recognizing this limitation, Popeyes invokes the incorporation-by-reference exception, Popeyes's Mot. at 3 n.2, which allows the Court to consider evidence introduced by a defendant in support of a 12(b)(6) motion to dismiss when the evidence is

---

[7]Popeyes also argues that Jones lacks standing to pursue a claim under Section 15(c) of BIPA, Popeyes's Mot. at 11, but Jones does not bring a claim under that subsection, *see* Pl.'s Resp. Br. at 5.

(1) referred to in the plaintiff's complaint, and (2) central to the plaintiff's claim, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). "The doctrine prevents a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit." *Id.* (cleaned up). For instance, in a breach-of-contract case, a defendant may attach the contract to its motion to dismiss because the contract is referenced in the complaint and central to the plaintiff's claim. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

Here, the First Amended Complaint does not reference either document. *See generally* First Am. Compl. That fact alone precludes the Court from relying on the incorporation-by-reference exception to consider this evidence. *See Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 804–05 (N.D. Ill. 2022) (declining to consider documents because they were not referenced in the complaint). What's more, it is not clear that the documents are central to Jones's BIPA claims. Popeyes asserts that the documents "form[] the basis of [her] claims" because her claims "relat[e] to her employment at the Jubilee's Restaurant." Popeyes's Mot. at 3 n.2, 4 n.3. But just because the documents are relevant does not mean they are *central* to Jones's claims. *See Levenstein*, 164 F.3d at 347; *Patterson*, 592 F. Supp. 3d at 805. Popeyes provides no explanation for why employment documents that do not mention biometric data are central to a BIPA case. *See Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *3 (N.D. Ill. Mar. 30, 2022) (declining to consider documents in a BIPA case because they do not describe how the defendant treats biometric data, "so they are not central to Plaintiffs' claims"). Because the incorporation-by-reference exception does not apply,

17

the Court excludes the Franchise Agreement and payroll records. *See Levenstein*, 164 F.3d at 347.[8]

Still, even without this evidence, the First Amended Complaint must, on its face, plausibly suggest that Popeyes is responsible for the alleged BIPA violations. The parties dispute what law governs this inquiry. Citing state law about franchisors and franchisees, Popeyes argues that it cannot be liable for Jubilee's actions because it did not control Jubilee's employment policies or practices. Popeyes's Mot. at 6–7; *see, e.g.*, *Bartolotta v. Dunkin' Brands Grp., Inc.*, 2016 WL 7104290, at *2 (N.D. Ill. Dec. 6, 2016). In contrast, Jones cites federal labor law to argue that Jubilee and Popeyes were her joint employers, and thus jointly responsible for the alleged BIPA violations. Pl.'s Resp. Br. at 17–20; *see, e.g.*, *Dye v. Knight Hawk Holdings, LLC*, 2024 WL 3088631, at *5 (S.D. Ill. June 21, 2024).

The Court need not decide the exact legal rule that governs here. It is enough to point out that the line of cases that each party cites present functionally the same, sensible rule: a defendant is only responsible for an alleged legal violation if it controls the policies or practices that caused the violation. *See Bartolotta*, 2016 WL 7104290, at *2 (describing how a franchisor is liable under Illinois law when it

---

[8]The Court may also consider external evidence when a defendant factually challenges the Court's subject matter jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). And as discussed earlier in this Opinion, Popeyes raises a standing argument based on its lack of an employment relationship with Jones, citing the payroll records. *See* Popeyes' Mot. at 10. But Popeyes does not invoke this jurisdictional exception as a basis for the Court to consider the evidence. *See generally id.* And, as the Court concluded earlier, Popeyes' argument is not about standing, but the merits of Jones's claim. Thus, the Court does not consider the documents for jurisdictional purposes, either.

"controls or has a right to control the specific policy or practice resulting in harm to the plaintiff" (cleaned up)); *Dye*, 2024 WL 3088631, at *5 (describing how a joint-employer relationship exists under the Fair Labor Standards Act when "each alleged employer … exercise[s] control over the working conditions of the employee" (cleaned up)). Thus, to adequately state a BIPA claim against Popeyes at this stage, Jones must allege facts that suggest Popeyes had some control over the collection and retention of her thumbprints.

Jones fails to do so. Throughout the First Amended Complaint, she says that both of the Defendants jointly took actions that violate BIPA. *See, e.g.*, First Am. Compl. ¶ 12 ("Upon Plaintiff's employment with Defendants, Plaintiff was required to submit a scan of her thumbprint."). But Jones never alleges any facts that suggest Popeyes specifically implemented, oversaw, or was otherwise involved in thumbprint collection at the Richton Park Popeyes. *See generally id.* Jones argues that it is enough that the First Amended Complaint "refers to Defendants' unlawful BIPA practices as one and the same for both Defendants," and thus impliedly alleges that Popeyes and Jubilee jointly employed her. *See* Pl.'s Resp. Br. at 17. But Jones alleges only *conclusions*, without any supporting *facts*, which is insufficient to state a BIPA claim against Popeyes. *See Iqbal*, 556 U.S. at 678–79; *see Bartolotta*, 2016 WL 7104290, at *3 (concluding that plaintiff adequately alleged the franchisor controlled the policy that caused plaintiff's harm because the complaint alleged facts that suggested control, such as uniformity of policy across different franchisee locations).

19

The Court thus dismisses the BIPA claims against Popeyes for failure to state a claim. Because this is the first dismissal, the dismissal is without prejudice for now, and the Court grants Jones leave to file a second amended complaint. *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n,* 377 F.3d 682, 687 (7th Cir. 2004) (describing how leave to amend should be freely granted, "especially … when such permission is sought after the dismissal of the first complaint"). The Court also reiterates the potential jurisdictional issue about the number of class members that it described earlier in the Opinion. If Jones chooses to file a second amended complaint against Defendants in this Court based on CAFA jurisdiction, she may plead that there are at least 100 class members *if* she can do so in good faith based on her memory or a reasonable inference about the class size. If the Defendants raise this issue, the Court would expect the parties to conduct limited jurisdictional discovery on the number of employees whose thumbprints were collected at the Richton Park Popeyes during the class period. Jones would, of course, bear the ultimate burden to show that there are over 100 class members. *See Schutte v. Ciox Health, LLC*, 28 F.4th 850, 854 (7th Cir. 2022).

If the dismissal of Popeyes as a defendant becomes final, then the Court would lack jurisdiction over this case because there is no diversity of citizenship, as explained earlier. The Court thus does not reach the Defendants' remaining arguments for dismissal, and Jubilee's motion to dismiss is terminated without prejudice as moot. If Jones files a second amended complaint, then Popeyes and Jubilee can renew their arguments in favor of dismissal.

20

**B. Motion for Sanctions**

The Defendants also move for sanctions against Jones and her attorneys. Defs.' Sanctions Mot. They argue that her attorneys violated Civil Rule 11 by (1) suing Popeyes despite knowledge that it was an improper defendant, and (2) suing Jubilee despite knowledge that Jones's name is not saved in connection with a thumbprint in Jubilee's POS system. *Id.* at 6–8.

Under Civil Rule 11, an attorney who presents a pleading to the Court certifies that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading "is not being presented for any improper purpose, … the claims, defenses, and other legal contentions are warranted by existing law," and "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). Put another way, the Court "may impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998); Fed. R. Civ. P. 11(c)(1), (4).

The Defendants first contend that Jones's attorneys violated Rule 11 by suing Popeyes even after learning that it was an improper defendant. Defs.' Sanctions Mot. at 6–7. For context, when Jones first brought this suit, she named only Popeyes as a defendant. R. 1, Compl. A few days later, Popeyes's counsel reached out to Jones's attorneys and informed them that Jubilee, the franchisee, was her employer. R. 34-1, Exh. 1, Beiley Aff. ¶ 5; R. 34-1, Exh. 2, Email Exchange at 3–4. After Jones did not voluntarily dismiss the suit, Popeyes moved to dismiss, contending that it was an

21

improper defendant. R. 11, Popeyes's First Mot. to Dismiss. Instead of filing a response brief, Jones filed the First Amended Complaint, which added Jubilee as a defendant and alleged that both Defendants jointly violated BIPA. *See generally* First Am. Compl. The Court permitted Jones's filing and terminated Popeyes's motion to dismiss as moot. R. 17, Minute Order. Then Popeyes and Jubilee brought the present motions to dismiss. *See* Popeyes's Mot.; Jubilee's Mot.

Defendants argue that these actions violated Rule 11 in two ways. First, they argue that Jones's attorneys had no legal or factual foundation for suing Popeyes after learning that Popeyes was not Jones's employer. Defs.' Sanctions Mot. at 6–7. But "a frivolous argument or claim is one that is baseless and made without a reasonable and competent inquiry." *Fries*, 146 F.3d at 458 (cleaned up). The Defendants do not show that there was *no* reasonable basis for suing Popeyes. As described previously, even if Popeyes did not directly employ Jones, franchisors can still be held liable for the unlawful actions of their franchisees in certain circumstances. *See supra* Section III.A.3. Indeed, the Court has dismissed the First Amended Complaint *without prejudice* (for now) because it remains to be seen whether Jones can allege facts suggesting that Popeyes controlled the collection of thumbprints at the Richton Park location and is thus responsible for the alleged BIPA violations. Thus, "it cannot be said that competent attorneys performing a reasonable investigation could not have believed in the merit of the position taken in the complaint or in their arguments in opposition to the defendants' motion to dismiss." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993).

Second, the Defendants argue that Jones's attorneys sued Popeyes for an improper purpose: to secure diversity of citizenship and ensure this Court has subject matter jurisdiction over the case. Defs.' Sanctions Mot. at 7. But Defendants offer no evidence of this improper motive. Again, Jones's attorneys may reasonably believe that Popeyes was involved in the alleged BIPA violations, which provides a proper motive for naming Popeyes as a defendant.

The Defendants next contend that Jones's attorneys violated Rule 11 by suing Jubilee even though Jones's name is not associated with a thumbprint in its system. Defs.' Sanctions Mot. at 7–8. Yes, the First Amended Complaint acknowledges that "Defendants' managers registered [Jones's] biometric identifier under someone else's name, either Crystal Waters or Walters." First Am. Compl. ¶ 13. But Jones argues that a Section 15(b) violation does not require that Defendants recorded her name correctly—in her view, the collection and storage of her thumbprint without a written release alone establishes the violation. Pl.'s Resp. Br. at 10–11. This is not a baseless or frivolous position. "Courts are divided on whether a plaintiff must allege a biometric identifier can identify a particular individual, or if it is sufficient to allege the defendant merely scanned, for example, the plaintiff's" thumbprint. *G.T. v. Samsung Elecs. Am. Inc.*, 742 F. Supp. 3d 788, 799 (N.D. Ill. 2024) (collecting cases). After all, BIPA broadly prohibits a private entity from collecting a person's biometric identifiers, including their fingerprints. *See* 740 ILCS 14/10; 740 ILCS 14/15(b). Because there is some legal basis for Jones's Section 15(b) claim, sanctions are unwarranted (even if her legal position is ultimately rejected). *See Harlyn*, 9 F.3d at 1270.

23

Ultimately, Defendants fail to show that the filing of the First Amended Complaint was frivolous, without factual or legal foundation, or asserted for an improper purpose. "While the Rule 11 sanction serves an important purpose, it is a tool that must be used with utmost care and caution." *Harlyn*, 9 F.3d at 1269 (cleaned up). Because Jones's attorneys did not violate Rule 11, the Court does not impose sanctions.

## IV. Conclusion

Popeyes's motion to dismiss, R. 18, is granted and the First Amended Complaint is dismissed, without prejudice for now. Jubilee's motion to dismiss, R. 24, is terminated without prejudice as moot. Finally, Defendants' motion for sanctions, R. 34, is denied. If Jones does not file a Second Amended Complaint by April 13, 2026, then the dismissal of Popeyes will become final and the Court will dismiss the claims against Jubilee for lack of subject matter jurisdiction (without prejudice to Jones refiling the claims against Jubilee in state court).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 26, 2026

24